IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JOSEPH BARNES, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:25-cv-2742-PX |
| SERGEANT TIMOTHY SNYDER *et al.*, | * | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

Pending is Defendants' Sargeant Timothy Snyder, Deputy Thomas Snyder, and Deputy Kortnie Marsch (collectively, "Defendant officers")' motion to dismiss Plaintiff Joseph Barnes ("Barnes")' Amended Complaint, or in the alternative, for summary judgment to be granted in their favor. ECF No. 18. The Court has reviewed the submissions and finds no need for a hearing. D. Md. Loc. R. 105.6. For the following reasons, the motion, construed as one to dismiss, is granted.

I. **Background**

On August 5, 2023, Barnes, his wife, and a friend were riding their motorcycles through St. Mary's County, Maryland, when Robert Allen Kinch ("Kinch") ran a stop sign and struck Barnes. ECF No. 11 ¶¶ 12–13. Thrown from his motorcycle, Barnes suffered extensive injuries. *Id.* ¶ 37. Defendant officers responded to the emergency. Once on the scene, and despite Barnes' obvious extensive injuries, the Defendant officers rifled through Barnes' pockets and found in his wallet a concealed-carry permit for a handgun. *Id.* ¶¶ 22–25. Defendant officers next asked Barnes' wife if he had a weapon. *Id.* ¶ 25. She said no but they frisked him anyway. *Id.* ¶ 29. No

officer asked the driver, Kinch, "a white American," the same questions; nor did they search Kinch's vehicle or look for alcohol or drugs, even though Barnes' wife raised the possibility that Kinch could have been driving under the influence. *Id*. ¶¶ 31–35. Kinch admitted fault for the accident, and the officers issued him a traffic citation for failure to yield to the right of way of another vehicle. *Id.* ¶ 42.

Barnes originally filed suit in St. Mary's County Circuit Court against the St. Mary's County Office of the Sheriff. ECF No. 2. The County, on behalf of the Sheriff's office, timely removed the case and moved to dismiss the Complaint. ECF Nos. 1 & 6. In response, Barnes amended the complaint, dropping the Sheriff's office as a defendant and naming the Defendant officers who had responded to the scene. ECF No. 11. The Amended Complaint accuses the officers of negligence (Count I), as well as violating Barnes' rights under Article 24 of the Maryland Declaration of Rights (Count II) and the Equal Protection Clause of the Fourteenth Amendment (Count III). Defendant officers move to dismiss all counts. ECF No. 18. The Court considers each argument in turn.

## II.    Standard of Review

When a motion to dismiss is styled in the alternative as a motion for summary judgment, the Court may exercise its discretion under Federal Rule of Civil Procedure Rule 12(d) to treat the motion under either standard. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436 (D. Md. 2011), *aff'd sub nom.*, 684 F.3d 462 (4th Cir. 2012). If the nonmovant opposes converting the motion to one for summary judgment and formal discovery has not taken place, the nonmovant must provide "by affidavit or declaration that, for specified reasons, [he] cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Where the nonmovant fails to file such

a declaration, he "cannot complain that summary judgment was granted without discovery." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) ("[T]he failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.") (citation omitted).

Although Barnes asks the Court not to treat the motion as one for summary judgment, he did not submit a Rule 56(d) declaration. However, because the claims so plainly fail as a matter of law, and because no formal discovery ensued, the Court will construe the motion as one to dismiss in an abundance of caution.

A motion to dismiss brought pursuant to Federal Rule to Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Court "accept[s] the factual allegations of the complaint as true and construe[s] them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F.

Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### III.   Analysis

#### A.   State Claims (Counts I and II)

Defendants first argue that the common law and state constitutional claims (Counts I and II) should be dismissed because Barnes did not satisfy the pre-filing requirements of the Maryland Tort Claims Act ("MTCA"), MD. CODE ANN., State Gov't § 12-101 *et seq*.  ECF No. 18-1 at 10–11. *See* MD. CODE ANN., State Gov't § 12-106(b)(1).  The MTCA waives sovereign immunity for state personnel who commit state constitutional and common law offenses sounding in tort. *Williams v. Morgan State Univ.*, 300 A.3d 54, 59 (Md. 2023).  *See also Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011) (analyzing Maryland Declaration of Rights Article 24 claim under the MTCA).  Pertinent here, deputy sheriffs such as Defendant officers are considered state employees.  *See Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) (citing *Rucker v. Harford Cnty.*, 558 A.2d 399 (Md. 1989)).  Thus, suits against them are subject to the MTCA's requirements.

Because the MTCA applies, Barnes was required to "submit[] a written claim to the [state] Treasurer . . . within 1 year after" the incident forming the basis of the claims.  MD. CODE ANN., State Gov't § 12-106(b)(1).  *See also Brooks v. St. Charles Hotel Operating, LLC.*, No. CV DLB-23-0208, 2023 WL 6244612, at *3 (D. Md. Sept. 26, 2023) ("[T]he MTCA's waiver of sovereign immunity 'is conditioned upon . . . the injured party filing notice of its tort claim with the State Treasurer's Office within one year after the injury.'") (internal citation omitted).  This requirement remains a firm "condition precedent to the filing of a suit." *State v. Copes*, 927 A.2d 426, 435 (Md. 2007).

Barnes concedes that he did not file a notice with the Treasurer. Instead, Barnes submitted a notice to the St. Mary's County Office of Law. ECF No. 20 at 3. He now asks the Court to consider that filing as substantial compliance under the MTCA, relying on *Faulk v. Ewing*, 808 A.2d 1262 (Md. 2002). *Id. Faulk*, however, concerned the pre-suit requirements applicable to the Maryland Local Government Tort Claims Act ("LGTCA"), not the MTCA. *Faulk*, A.2d at 1265. The LGTCA sets forth a separate statutory scheme whereby local governments provide limited recovery for "those injured by local government officers and employees acting without malice and in the scope of employment." *Moore v. Norouzi*, 807 A.2d 632, 639 (Md. 2002). But it is undisputed that the "St. Mary's County Sheriff and his Deputies are state officials when acting in their law enforcement capacities." *Rossignol*, 321 F. Supp. 2d at 651. Because of this, Barnes was required to follow the MTCA's pre-suit conditions, not the LGTCA. And the Court cannot simply import the LGTCA requirements onto the MTCA. Accordingly, because Barnes failed provide sufficient pre-suit notice to the state Treasurer as the MTCA requires, the Court must dismiss Counts I and II. *See Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 278 (D. Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024) (dismissing claims for failure to provide timely MTCA notice to the state Treasurer); *MedSense, LLC v. Univ. Sys. of Md.*, Civ. No. PWG-20-892, 2021 WL 3142004, at *9 (D. Md. July 26, 2021) (dismissing claims because the plaintiff "was required to submit its written claim to the Maryland State Treasurer, or designee, within a year, but it did not").

Alternatively, even if Barnes had complied with the notice provisions, the claims nonetheless fail for other reasons. As to the negligence claim, Defendant officers enjoy statutory immunity under the MTCA if their acts were "committed within the scope of their duties [and] when the violations are made without malice or gross negligence." *E.W. by & through T.W. v.*

*Dolgos*, 884 F.3d 172, 187 (4th Cir. 2018) (internal quotation marks and citation omitted).  *See* MD. CODE ANN., Cts & Jud. Proc. § 5-522(b); MD. CODE ANN., State Gov't § 12-105.  Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud . . . . "  *Lee v. Cline*, 863 A.2d 297, 311 (Md. 2004) (quoting *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999)).  Gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another . . . ."  *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (quoting *Liscombe v. Potomac Edison Co.*, 495 A.2d 838, 846 (Md. 1985)).

When viewing the Amended Complaint facts most favorably to Barnes, nothing makes plausible that Defendant officers acted with malice or gross negligence.  As best the Court can discern, Barnes' negligence theory is that the Defendant officers searched his pockets and asked about the presence of a weapon instead of tending to his injuries.  ECF No. 11 ¶ 53.  ("Defendants breached their duty of care by touching Mr. Barnes person following his injury, with no regard to his physical injuries and causing him unnecessary pain.").  But it is implausible that removing Barnes' wallet from his pocket alone would delay his care or inflict pain such that the officers can be said to have acted with either an intent to injure (malice) or with reckless disregard for his life or property (gross negligence).  Simply put, no facts nudge the claim from possible to plausible. *See Iqbal*, 556 U.S. at 678; *Barbre*, 935 A.2d at 714–15.  *See, e.g.*, *Boyer v. State*, 594 A.2d 121, 131–32 (Md. 1991) (holding conclusory allegations of gross negligence are not sufficient to bring the claim outside of the immunity provisions of the MTCA); *Graham v. Maryland*, 738 F. Supp. 3d 644, 658 (D. Md. 2024) (holding a plaintiff cannot "simply includ[e] a claim for gross negligence" to bring the claim outside the immunity provisions of the MTCA).  Accordingly, Defendants enjoy statutory immunity under the MTCA for the negligence claim.  *See Newell v.*

*Runnels*, 967 A.2d 729, 766 n.28 (Md. 2009) (Maryland Supreme Court noting "the MTCA does not distinguish between constitutional torts and common law torts").

As for the Article 24 claim, Barnes appears to be averring the same equal protection violation he pleads under the federal Constitution in Count III. *See* ECF No. 11 ¶ 66 ("Defendants treated Mr. Barnes more adversely than Mr. Kinch on the basis of his race, although both were involved in the collision, and Mr. Barnes suffered extensive and obvious physical injury.") and *id*. ¶¶ 69–76 (alleging race-based disparate treatment regarding the search of Barnes' pocket and questions about the presence of a firearm). *See also Ashton v. Brown*, 660 A.2d 447, 462 (Md. 1995) ("While Article 24 contains no express equal protection clause, it nonetheless has been construed to guarantee all persons the equal protection of the laws."). But as discussed below, the equal protection claim fails on the merits. *See infra* at 8–9. Thus, for the same reasons, so too does the Article 24 claim. Counts II and III are dismissed.

### B.   Equal Protection Claim (Count III)

As for the equal protection claim, Defendant officers rightly point out that Barnes has sued them exclusively in their official capacities. ECF No. 11 at 1. But plainly, the Defendant officers enjoy Eleventh Amendment immunity for such official capacity suits. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Indeed, claims against state employees acting in their official capacities are subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Bumgardner v. Taylor*, Civ. No. RDB-18-1438, 2019 WL 1411059, at *6 (D. Md. Mar. 28, 2019) ("Maryland state law claims brought against Baltimore Police officers in their 'official capacity' are also barred by sovereign immunity."). Barnes does not respond to this well-placed argument. The official capacity claim is barred by the Eleventh Amendment.

To the extent Barnes intended to sue Defendant officers in their individual capacities, the Amended Complaint does not make plausible an equal protection violation. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  Essentially, the Clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he [or she] was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Ath., Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citations omitted); *see also Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he [or she] has been treated differently from others with whom he [or she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").  If the plaintiff plausibly avers both prongs, the Court next must "determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted).

When viewing the Amended Complaint most favorably to Barnes, he has not made plausible either prong of the claim.  First, Barnes and his White counterpart, Kinch, were not similarly situated.  Barnes was grievously injured where Kinch was not.  This matters when considering that officers reasonably needed to identify the parties involved in a motor vehicle accident.  Because Kinch was not grievously injured, Defendant officers had no need to go into his pockets to retrieve his identification.  They could simply ask him.  But Defendant officers would need to retrieve Barnes' identification if he were, as the Amended Complaint states, on the

ground, "bleeding" and "screaming in pain." ECF No. 11 ¶¶ 22, 68, 93. Plainly, the two men were not "similarly situated" in the ways that mattered to the officers responding to an emergency.

Second, even if the two men were similarly situated, no complaint facts make plausible that the officers treated them differently on account of discriminatory animus. Rather, Defendant officers located a concealed carry gun permit in Barnes' wallet. From this, the officers could plausibly infer that a firearm may be nearby; after all, the purpose of the permit is to allow Barnes to be armed in public. By extension, an officer would legitimately attempt to locate and make safe a firearm safe once learning its possessor has been hurt. This gave the officers a plausible and non-discriminatory reason for asking Barnes whether he had a firearm with him. But it would make little sense to ask Kinch—who did not have such a permit—the same question. Simply because one man is White and the other Black does not alone give rise to an inference of discriminatory animus. *See SAS Assocs. 1, LLC v. City Council for City of Chesapeake, Virginia*, 91 F.4th 715, 720 (4th Cir. 2024) ("Discriminatory animus cannot be established simply by showing 'that a benefit was denied to one person while conferred on another.'") (quoting *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995)). Thus, because the Amended Complaint fails to state a plausible equal protection violation, Count III must be dismissed.

## IV.    Dismissal without or without prejudice

As for whether the claims should be dismissed with or without prejudice, the Court retains wide discretion in this regard. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Dismissal with prejudice is justified where, as here, Barnes was already alerted to the pleading defects in a prior motion to dismiss, ECF No. 6, and nonetheless did not cure the defects in the Amended Complaint, ECF No. 11. *See Glover v. Loan Science, LLC*, Civ. No. PWG-19-01880, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)). Moreover, even if Barnes could somehow cure the MTCA

9

notice failure, the alleged facts in the Amended Complaint simply do not make plausible the claims.  Nor can the Court discern how Barnes could cure the factual shortcomings if allowed a third bite at the apple.  *See McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on different grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020).  Accordingly, the Court dismisses the Amended Complaint with prejudice.

**V.      Conclusion**

Based on the foregoing, the Motion to Dismiss the Amended Complaint is GRANTED. The Amended Complaint is DISMISSED with prejudice.  A separate Order follows.


  5/13/2026                                                    /s/                                        
Date                                                        Paula Xinis
                                                           United States District Judge